RUEMENAPP v. NATIONAL FOOD STORES, INC.

1. NEGLIGENCE—STOREKEEPERS—SAFE PREMISES—REASONABLE CARE.

   A storekeeper must use reasonable care to provide reasonably
   safe premises for his customers but he is not an insurer of his
   customers' safety, consequently, the fact that a customer falls
   and is injured on a storekeeper's premises does not constitute
   actionable negligence since an injured customer must show
   that the storekeeper breached his duty to exercise reasonable
   care and that that breach proximately caused the customer's
   injury.

2. NEGLIGENCE—STOREKEEPERS—SAFE PREMISES—PRIMA FACIE NEG-
   LIGENCE.

   A *prima facie* case of actionable negligence of defendant store-
   keeper was not established where the record showed that the
   minor plaintiff gave inconsistent accounts of her accident, tes-
   tifying that she got off a mechanical hobby horse then tripped
   and fell, cutting her wrist over a pop bottle which her girl-
   friend had placed at the base of the horse, while indicating on
   cross-examination that she fell directly from the horse, since

REFERENCE FOR POINTS IN HEADNOTES
[1–5] 38 Am Jur, Negligence § 131 *et seq.*

both accounts were equally plausible, and selection between the two accounts of how the accident happened was a matter of conjecture only.

3. NEGLIGENCE—ACTIONABLE    NEGLIGENCE—EVIDENCE—CAUSATION—
   THEORIES OF CAUSATION.

   Trial judge's assumption that the minor plaintiff fell from a mechanical hobby horse in defendant's store and landed on a pop bottle, cutting her wrist, was unwarranted conjecture where the record showed another plausible explanation for the accident since it is not enough for a plaintiff to show that his injury was caused by one of two or more possible causes if defendant is responsible for but one of them.

4. NEGLIGENCE—STOREKEEPERS—EVIDENCE—CONJECTURAL CAUSATION
   —DIRECTED VERDICT.

   Refusal to grant defendant's motion for directed verdict was error where plaintiff, the only witness to describe how she was injured, gave inconsistent, yet equally plausible, accounts of how the accident occurred, for this required the court to indulge in impermissible conjecture.

5. NEGLIGENCE—STOREKEEPERS—HAZARDOUS CONDITION—KNOWLEDGE
   OF CONDITION.

   Refusal to grant defendant's motion for directed verdict was error even while assuming *arguendo* that plaintiff fell over a pop bottle while alighting from a mechanical hobby horse in defendant's store, where there was no evidence that defendant had created the hazardous condition, that the defendant had knowledge of the unsafe condition, nor that the condition had existed for a sufficient length of time that he should have known of its existence.

Appeal from Wayne, Horace W. Gilmore, J. Submitted Division 1 April 7, 1970, at Detroit. (Docket No. 6,437.) Decided July 27, 1970. Leave to appeal granted December 15, 1970. 384 Mich 790.

Complaint by Ernest T. Ruemenapp, for himself and as next friend of Sharon Ruemenapp, a minor, against National Food Stores, Inc., to recover for injuries sustained by Sharon Ruemenapp while on defendant's premises. Judgment for plaintiffs. Defendant appeals. Reversed.

Lopatin, Ward, Miller & Bindes (Theodore M. Rosenburg, of counsel), for plaintiffs.

Robert A. Sullivan (Patrick A. Heck, of counsel), for defendant.

Before: J. H. GILLIS, P. J., and V. J. BRENNAN and WEIPERT,* JJ.

J. H. GILLIS, P. J. This action was commenced in the Wayne county circuit court by Ernest Ruemenapp, individually and as next friend of Sharon Ruemenapp, for injuries sustained by his daughter while on defendant's premises.

The complaint alleged that Sharon, while an invitee in defendant's store, was attracted to a mechanical hobby horse maintained by defendant in its store; and that, "while getting off the horse after riding it, [Sharon] did trip and fall on empty pop bottles allowed to accumulate on the premises near the base of the electric rocking horse." Negligence was charged in that defendant allegedly permitted the area near the horse to remain cluttered with pop bottles when it knew, or should have known, that such condition was dangerous to minors using the hobby horse. The complaint also charged that defendant's agents permitted plaintiff Sharon and a second minor to ride the horse at the same time, contrary to the store's policy, and that defendant failed to exercise care to protect those minors who used the mechanical horse unaccompanied by an adult.

Trial was to the court sitting without a jury. At the close of plaintiffs' proofs, the defendant moved for a directed verdict, which motion was reserved

---

* Circuit judge, sitting on the Court of Appeals by assignment.

pending presentation of defendant's evidence. The defense rested, however, without offering any proof. After hearing renewed argument in support of defendant's motion, the trial court denied the motion and refused to direct a verdict in defendant's favor. In his written opinion, the trial judge found that defendant was negligent and that Sharon's injuries proximately resulted from defendant's negligence. From a judgment of $2,600 entered in plaintiffs' favor, defendant appeals.

On appeal, the only question we need answer is whether, on the evidence presented, plaintiffs had successfully established a *prima facie* case of actionable negligence. In considering this question we are cognizant that we must "accord plaintiffs that full measure of favorable view to which they were entitled upon submission of defendant's said motion." *Schedlbauer* v. *Chris-Craft Corporation* (1968), 381 Mich 217, 221. Nevertheless, our review of the record leads us to answer the question presented in the negative. We hold that the trial court erred in failing to grant judgment for defendant as a matter of law.

In Michigan, a storekeeper is not an insurer of the safety of his customers, but is under a duty to use reasonable care to provide reasonably safe premises for such customers. *Shorkey* v. *Great Atlantic & Pacific Tea Co.* (1932), 259 Mich 450; *White* v. *Herpolsheimer Company* (1950), 327 Mich 462 (26 ALR2d 667). The mere fact that a customer falls and is injured on the premises of a storekeeper does not constitute actionable negligence. As this Court noted in *Winfrey* v. *S. S. Kresge Company* (1967), 6 Mich App 504, 507:

"It must be shown that the storekeeper has breached his duty to exercise reasonable care to provide a reasonably safe place for customers on

the premises, *and that the breach proximately caused the injury complained of.*"   (Emphasis supplied.)

*Accord, Honorl* v. *J. L. Hudson Company* (1968), 10 Mich App 623.   That the harm suffered by plaintiff must be shown to have proximately resulted from defendant's breach is hornbook law.   See Prosser, Torts (3d ed), § 30, p 146; 2 Restatement Torts, 2d, § 281, p 4.   And, whatever meaning is assigned to the words "proximate cause", courts are unanimous in requiring that defendant's wrongful conduct be a cause-in-fact of plaintiff's injury before there is liability.   See 2 Harper & James, Torts, § 20.2, p 1110; Prosser, Torts (3d ed), § 41, p 240.

In the present case, it is clear that Sharon suffered a harm when she fell in defendant's store; she cut her left wrist.   Just what caused her to fall is not, however, apparent from the record.

The complaint, quoted *supra,* suggests that Sharon tripped and fell over an accumulation of empty pop bottles.   Causation in fact is alleged in that defendant is charged with wrongfully permitting the empty pop bottles to accumulate near the base of the horse.

At trial, Sharon Ruemenapp, then ten years old, was the only witness called by plaintiffs' counsel who could describe how the accident occurred.   On the date of her fall, Sharon was six years of age.   Her testimony on direct examination is as follows:

"*Q.* Okay.   All right, then what happened after you were sitting on the horse?
"*A. When we got off, and I fell over the bottle.*
"*Q.* Where were the bottles?
"*A.* They were near the horse.
"*Q.* And what happened when you fell over the bottles?
"*A.* I cut my wrist.

\*   \*   \*

*"Q.* Okay. Do you know if where the bottle came through that you tripped over, do you know whose bottle that was? Do you know that?

*"A.* That was my girlfriend's.

*"Q.* And she had put it there?

*"A.* Yes.

*"Q.* Before you got on the horse?

*"A.* Yes.

*"Q.* And where had she put it?

*"A.* Near—real close to the horse.

*"Q.* Near the back of the horse?

*"A.* I can't remember.

*"Q.* All right. Did you trip over that, or fall over that, as you were sliding off the horse?

*"A.* Yes." (Emphasis supplied.)

Sharon's direct testimony, particularly her statement, "I fell over the bottle," indicates that she fell and cut her wrist as a result of the placement of a bottle near the base of the horse by her girlfriend. Her testimony is thus consistent with the allegation made in plaintiffs' complaint that, while getting off the horse after riding it, Sharon tripped on a pop bottle placed near the base of the horse.

On cross-examination, however, a totally new account of how the accident occurred was given by Sharon Ruemenapp:

*"Q.* Now, Sharon, how did you fall when you got off the horse? Had you already gotten down and were walking and tripped over the bottle, or did you hit the bottle as you got off the horse? Or don't you remember?

*"A. I fell off.*

*"Q.* You fell off the horse?

*"A.* I don't remember.

\* \* \*

*"Q.* Did you get off the horse first?

*"A.* I can't remember." (Emphasis supplied.)

Here, contrary to the allegations of the complaint, Sharon's testimony indicates that she fell directly from the horse, rather than tripping and falling over an empty pop bottle.

The trial judge, apparently troubled by Sharon's conflicting accounts of the accident, also inquired of her:

"*The Court:* Sharon, I want to ask you one question. Then I think we will be done, unless someone else has anything further.

"You said at one time that you got off the horse. The other time you fell off. Now, did you fall off or did you step off? How did you get off the horse?

"*The witness:* There is this thing that you get off—something like—. See, there is this horse. And then there is this thing at the bottom. And you get off the horse, and then you go down on the floor.

"*The Court:* Well, how did you get off the horse? Did you fall off or did you step off after your girlfriend had finished, after the ride was over?

"Do you understand what my question is? My question is: How did you get off the horse? Did you get down by yourself? Or did you slide off? Or fall off? Do you remember?

"*The witness:* No, I think—

"*The Court:* I can't hear you.

"*The witness:* I think I fell off, but I can't remember."

Accepting plaintiffs' case as it appears from Sharon's own testimony and fully crediting her testimony, see *Detroit & Milwaukee R. Co.* v. *Jacob Van Steinburg* (1868), 17 Mich 99, 117, quoted by the Court in *Schedlbauer* v. *Chris-Craft Corp., supra* at p 229, what could plaintiffs fairly claim upon that evidence? In particular, what can be said regarding the cause of the accident?

On the testimony presented, two explanations appear. First, Sharon sustained her injuries when

she tripped over a pop bottle located near the base of the horse. Alternatively, she cut her wrist when she fell off the horse itself, landing on the bottle. These two explanations are equally plausible; moreover, on this record they stand in equipoise. Nothing in the findings of the trial judge is to the contrary.[1] Under the circumstances, selection between the two accounts of how the accident occurred is a matter of conjecture only.

"There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only." *Kaminski* v. *Grand Trunk W. R. Co.* (1956), 347 Mich 417, 422, quoting *City of Bessemer* v. *Clowdus* (1954), 261 Ala 388, 394 (74 So 2d 259).

In concluding that defendant was liable on the testimony presented, the trial judge chose Sharon's latter explanation of what caused her injury. His opinion makes it clear that he assumed she fell off the horse itself and landed on the bottle.[2] Such an assumption was, on this record, unwarranted.

"[F]act finders, be they jury or court, may not indulge in conjecture." *Genesee Merchants Bank & Trust Company* v. *Payne* (1967), 6 Mich App 204, 209.

---

[1] In fact, the trial judge was unable to say in which way the accident occurred. We quote from his opinion: "I find * * * that the plaintiff either fell or stepped off the horse—*and the testimony is unclear in this matter;* the child, who is only ten at the time of trial, testifying at one time she fell off and another time she stepped off of the horse, so that in getting off the horse she was cut on a glass object on the floor." (Emphasis supplied.)

[2] The trial judge found "that the company did not use reasonable care to warn of or protect from the danger to children upon this horse, which was put there by them or operated for a profit by them. I find that this failure to use reasonable care was a proximate cause of the injury because it was foreseeable that if more than one person got on this horse that *one could fall* and be injured as a result thereof." (Emphasis supplied.)

Since it does not affirmatively appear from Sharon's testimony what caused her to fall—the evidence being equiponderant at best—her case, and with it her father's, must fail for want of proof. What was said in *Frye* v. *City of Detroit* (1932), 256 Mich 466, 469, 470, applies here.

"The rule, in negligence cases, is well stated in *Ramberg* v. *Morgan* (1928), 209 Iowa 474 (218 NW 492):

" 'True, it was not necessary for plaintiff to prove the causal connection by direct evidence, but substantial evidence must be furnished upon which a reasonable basis for inference may be made. The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility. Verdicts must rest upon reasonable certainty of proof. Where the proof discloses that a given result may have occurred by reason of more than one proximate cause, and the jury can do no more than guess or speculate as to which was, in fact, the efficient cause, the submission of such choice to the jury has been consistently condemned by this court and by other courts.'

"See, also, *Bruggeman* v. *City of York* (1916), 254 Pa 430 (98 A 970), where it was said:

" *'It is not enough for plaintiffs to show the injury complained of was due to one of two or more possible causes if defendant was responsible for but one of them.' "* (Emphasis supplied.)

See, also, 2 Harper & James, Torts, § 20.2, p 1111; 65A CJS, Negligence, § 244(3), p 734.

Accepting, *arguendo,* Sharon's testimony that she fell over the bottle rather than from the horse, nothing in the record suggests that defendant would be responsible for her injuries. No proof was offered that defendant had created the hazardous condition existing at the base of the hobby horse. Sharon's testimony was to the contrary; her girl-

friend had placed the bottles near the horse. Nor was there any evidence that the unsafe condition was known to the storekeeper or was of such a character or had existed for a sufficient length of time that he should have had knowledge of it. In the absence of such proof, defendant could not be held liable. *Winfrey* v. *S. S. Kresge Company, supra; Serinto* v. *Borman Food Stores* (1968), 380 Mich 637.

Under the circumstances, we reach the conclusion that plaintiffs failed to establish by a preponderance of the evidence that Sharon's injuries were caused in fact by defendant's negligence. *Cf. Allen* v. *Honeycutt* (La App 1965), 171 So 2d 770; *Messier* v. *Adicks* (1968), 251 SC 268 (161 SE2d 845). The trial court's finding to the contrary is, on this record, clearly erroneous. GCR 1963, 517.1. The facts proven show only that there were two possible causes of her injuries, each equally plausible, for one of which defendant was not responsible.

The judgment is reversed with costs to defendant. All concurred.